POSNER, Circuit Judge,
concurring in part and dissenting in part.
I agree with much in the majority opinion, but several provisions of the Illinois statute seem to me to burden the plaintiffs freedom of speech unduly; we should invalidate them.
The Center for Individual Freedom is a nonprofit organization engaged in public advocacy. It makes advertisements and disseminates them in television, print, online, and other media; it maintains a website; and it produces a radio show. It conducts some of its activities during election campaigns, often commending to the electorate candidates whom it thinks likely if elected to support the policies it advocates. But it is not affiliated with and does not coordinate its activities with any candidate, campaign, or political party and is thus an “independent” advocacy group within the meaning of Citizens United v. Federal Election Commission, 558 U.S. 310, 130 S.Ct. 876, 910, 175 L.Ed.2d 753 (2010), and Buckley v. Valeo, 424 U.S. 1, 45-47 and n. 53, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). It therefore is not subject to all the regulations that states are allowed to impose on political committees that are affiliated with candidates, campaigns, or parties. A state is permitted, however, to compel public disclosure of election-related activities of independent groups, on the theory that such disclosure helps the electorate evaluate candidates for public office, id. at 66, 81, 96 S.Ct. 612, though a state may not limit donations to an independent advocacy organization or the expenditures that such an organization can make, or ban its speech. See SpeechNow.org v. Federal Election Commission, 599 F.3d 686, 694-96 (D.C.Cir.2010) (en banc).
Illinois regulates what it calls “political committees,” and the term includes not only partisan committees but also any independent organization or individual that “accepts contributions or makes expenditures during any 12-month period in an aggregate amount exceeding $3000 on behalf of or in opposition to a candidate or candidates for public office” or “in support of or in opposition to any question of public policy to be submitted to the electors,” or that “makes electioneering communications,” exceeding the monetary threshold, that are “related to” a candidate or to a question of public policy. 10 ILCS 5/9-1.8(d), (e). A “contribution” is among other things “anything of value that constitutes an electioneering communication made in concert or cooperation with or at the request, suggestion, or knowledge of a candidate, a political committee, or any of their agents,” or “a transfer of funds received by a political committee from another political committee.” 10 ILCS 5/9-1.4(A)(1.5), (3). An “expenditure” is anything of value given “in connection with the nomination for election, election, or *500 retention of any person to or in public office,” 10 ILCS 5/9 — 1 -5(A)(1), or “that constitutes an electioneering communication made in concert or cooperation with or at the request, suggestion, or knowledge of a candidate, a political committee, or any of their agents.” 10 ILCS 5/9-1.5(A)(2). And finally an “electioneering communication” is any broadcast, cable, satellite, or Internet communication that refers to a “clearly identified candidate,” “clearly identified political party,” or “clearly identified question of public policy that will appear on the ballot,” provided that the communication is made within 60 days before a general election or 30 days before a primary election, is “targeted to the relevant electorate,” and “is susceptible to no reasonable interpretation other than as an appeal to vote for or against a clearly identified candidate ... or a question of public policy.” 10 ILCS 5/9-1.14(a).
A political committee must register with the Illinois Board of Elections, 10 ILCS 5/9-3(a), and file quarterly reports that open its finances to public scrutiny. For each report must reveal “all financial activity,” as the state website puts it (Illinois State Board of Elections, “Political Committee Report Filing Forms,” http:// elections.il.gov/CampaignDisclosure/ PoliticalCommittee.aspx (visited Aug. 23, 2012)), in the previous quarter — must reveal the total contributions it received, along with all other receipts, and the total expenditures it made, including investments and loans; along with the names, addresses, and other identifying details of donors, and of recipients of the committee’s expenditures. 10 ILCS 5/9 — 10(b), -11(a).
Having to disclose the names of donors is the most onerous requirement that the statute imposes on a political committee because many donors don’t want to be publicly identified as contributing to an organization engaged in public advocacy regarding issues of public policy, which usually are controversial. Indeed CIF alleges without contradiction that its donors require assurances that their identities will not be disclosed, and that this anonymity is a condition of their support. So CIF very much does not want to be classified as a political committee and one way to avoid that fate is to avoid any activity that might, even if there is no certainty that it would, require CIF to register.
The vagueness of a number of key provisions of the Illinois law is therefore worrisome. A vague statute can deter lawful activity. Cautious persons will want to avoid even a small probability of being found to have violated it, and the safest way to do that is to avoid lawful activity that is just across the line from the unlawful — to create a buffer zone around the statutory core, just as cautious men decide not to have sex with young-looking women who probably are not below the age of consent but may be. When the lawful activity likely to be deterred by a vague statute is not extramarital sex but the exercise of free speech — a right at the apex of modern constitutional solicitude — a finding of vagueness is apt to doom the statute. FCC v. Fox Television Stations, Inc., -U.S. -, 132 S.Ct. 2307, 2317-18, 183 L.Ed.2d 234 (2012). The vague provisions in the Illinois election statute may cause CIF to refrain from constitutionally protected advocacy that the state has no power to regulate because the advocacy could not influence an election.
Nor can a federal court make a binding interpretation of a state statute, endeavoring to trim its vague provisions; if it attempts a narrowing interpretation that deviates widely from the statute’s apparent meaning it is taking a big risk that the state will reject the interpretation. Stenberg v. Carhart, 530 U.S. 914, 944-45, 120 *501 S.Ct. 2597, 147 L.Ed.2d 743 (2000). That risk mil in turn operate as a deterrent to the advocacy group’s relying on the federal court’s interpretation. With an election looming, advocacy groups can’t wait for the Supreme Court of Illinois to interpret all the vague provisions of the election statute in cases instituted in the state court system that are likely to take years to reach and be decided by the state’s highest court.
These are the vague provisions:
1. A transfer of funds from a political committee to a political committee qualifies as a contribution regardless of amount. A political committee must report all receipts, not just contributions as defined by the statute, see 10 ILCS 5/9-ll(a)(10), and in addition must report “the name and address of each political committee from which the reporting committee received, or to which that committee made, any transfer of funds.” 10 ILCS 5/9-ll(a)(6). So if by virtue of other contributions or other activities CIF were to be classified as a political committee, it would have to identify any other political committees from which it received money. It might not know a donor was a political committee, and that would be no defense, because the statute does not require knowledge or even suspicion that the transferor is a political committee — there is no state of mind requirement at all. The transferee would have to investigate the financial activity of each donor (including an individual, who as a “natural person” can constitute a political committee) to determine whether the donor was a political committee. It might be a committee that had improperly failed to register; that would be no defense. Yet it would be afraid to list a donor as a political committee unless confident that it was one, as otherwise it might get into trouble with the donor. Damned if it does, damned if it doesn’t.
An unregistered entity doesn’t have to disclose its contributions and expenditures, so it would rarely be clear whether an entity qualified as a political committee. Very little of the information required to determine the status of a donor is public. This is an additional reason why advocacy groups like CIF might forgo donations from unfamiliar donors. But by reducing the group’s resources, this cautious response to the vagueness of the statute would curtail its advocacy.
An alternative reading of the “transfer of funds” provision is that receipt of money from a political committee makes the recipient a political committee. Illinois may have been concerned that interest groups would transfer money in chains ending with a committee that didn’t have to register; to target those chains and thus close a potential loophole in the statute, the Illinois courts might read the statute to reach all members of the chain. This interpretation would have an even greater tendency to discourage an advocacy group from accepting donations from unfamiliar individuals or organizations.
2. Any “electioneering communication” made with the “knowledge” of a candidate is an expenditure that if it exceeds the low statutory threshold makes the advertiser a political committee. The word “knowledge” can’t be interpreted to require that the advertiser have communicated with the candidate, because knowledge can be acquired in other ways. My colleagues think the Illinois courts would interpret the word “knowledge,” which appears at the end of the sequence “request, suggestion, and knowledge,” to mean the same thing as the two preceding words because it is the “more general word.” But it’s no more general than the other words; the three words are simply different from one another. It’s not like a statute that refers to “automobiles, trucks, tractors, motorcy *502 cíes, and other motor-powered vehicles”; in that sequence “motor-powered vehicles” is indeed more general than the itemized examples, but presumably not intended to be so encompassing a catchall as to include airplanes, since all the preceding terms in the sequence denote different forms of land-based transportation. Cf. McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931) (Holmes, J.).
So an organization that wanted to avoid crossing the $3000 threshold would if cautious refrain from broadcasting ads entirely, rather than just avoid coordinating their ads with the candidate.
The district judge was troubled by this provision and to save it interpreted “knowledge” to mean “affirmative acquiescence.” But what does that mean? That the candidate was delighted to learn of an ad that praised him or a policy he was pushing?
3. If an “electioneering communication” is deemed to be “made” whenever a user accesses a website, cf. Flava Works, Inc. v. Gunter, 689 F.3d 754, 760-61 (7th Cir.2012), then even an appeal to vote that is posted more than 30 or 60 days before the election (depending on whether it is a primary or a general election) will constitute an expenditure that, if it exceeds the modest threshold in the statute, will make the communicator a political committee and thus require it to register. A television advertiser controls the dates on which his ad is shown; but an Internet ad or web posting remains online and accessible until removed. The advertiser may delete the ad from his website, but it may already have been copied and posted on a hundred other websites. Should the advertiser be thought to be continuing to make an electioneering communication by failing to ensure that his ad posted during the safe harbor periods is no longer accessible to voters? And how can he do that? On these critical questions, the statute is silent. The only sure way to avoid having to register as a political committee is therefore to avoid endorsing an Illinois candidate online at any time.
The Illinois courts might interpret “made” to refer only to the original posting of the ad. But this would open up a loophole; the advocacy group might have posted the ad shortly before the 30- or 60-day cutoff and deleted it just before the cutoffs, confident that the campaign favored by the ad would copy it and post it so that it would be seen right up to election day. Because the state courts might well decide to close this loophole by interpreting “made” to include the initial posting, advocacy groups would be running a legal risk by posting online ads even long before the date of the election, and might therefore be deterred from doing so.
4. Any payment “in connection with” an election (including payment for ads) counts as an expenditure. “In connection with” could apply to communications not made for the purpose of influencing the election, such as speech on issues of policy that happen to be salient in the campaign. An advocacy group might intend its message to reach a wider audience. It might even be advocating a position embraced by neither candidate. Disclosure of such a group’s finances would not be closely related to the state’s interest in informing the electorate about a candidate’s supporters. Yet the statute may require it.
Speech can have all sorts of connections to an election: it may mention an election, describe a candidate and his positions, or simply refer to a policy that is at issue in the campaign. A dry discussion of economic indicators might be seen as being “in connection with” an election in which the main issue was economic policy. Because disclosure requirements are not constitutionally limited to express advocacy *503 for a candidate, see Citizens United v. Federal Election Commission, supra, 130 S.Ct. at 915, there is no telling how far Illinois’s definition reaches into the realm of issue advocacy. Once again, to be sure of not having to register, an organization like CIF might decide to avoid speaking about any policy issues during election campaigns. It might go silent during campaigns.
5. Expenditures made “in connection with” an election count towards the $3000 threshold for registering only if they are made “on behalf of or in opposition to” a candidate, and that might seem to take care of the concerns I just expressed with respect to “in connection with.” But speech supporting or opposing a policy associated with a candidate could be seen as being on behalf of or in opposition to that candidate, especially if the policy is the candidate’s signature issue. The term thus does not clearly exclude most issue advocacy, and groups such as CIF might therefore avoid speaking on issues that could be associated with a particular candidate. Imagine a single-issue candidate: a songbird enthusiast, he wants the owners of cats to be forbidden to allow their pets out of doors, since cats, indifferent to avian beauty and melody, kill birds for food and sport. If the humane society buys ads that declare its passionate support for the songbirds, isn’t there a sense in which it is advocating for the election of the songbirds’ candidate and therefore making an expenditure on his behalf and in opposition to his opponent? Or should “on behalf of’ be interpreted to mean motivated by a desire to help the candidate rather than the cause the candidate supports? Who knows?
McConnell v. Federal Election Commission, 540 U.S. 93, 170 n. 64, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003), overruled on other grounds in Citizens United v. Federal Election Commission, supra, held that a federal law that contained the words “promotes,” “supports,” “attacks,” and “opposes” was not vague; and the phrase “on behalf of or in opposition to” is similar. But the federal law involved speech referring to particular candidates and made by state political parties the actions of which are presumed to be coordinated with candidates. The Illinois law applies to all who want to speak on public issues but furnishes no clue to how related to a candidate’s position their speech must be to trigger the disclosure requirements. The statute is not limited to groups that coordinate their activity with a candidate or expressly advocate for him. And it is not, as in the counterpart federal statute, 2 U.S.C. § 431(8)(A)(i), limited to speech made “for the purpose of influencing” an election, since there is no state of mind limitation in the Illinois statute, so no basis for using purposiveness to limit relatedness.
The more arbitrary the meaning that must be assigned to a state statute to avoid constitutional problems, the less confident we can be that the state courts would adopt it. If independent advocacy groups share these doubts, caution may make them steer well clear of the statutory conditions for having to register as a political committee, with all the burdens entailed by registration.
When the five vague statutory provisions that I have been discussing are considered in combination, it becomes apparent that their cumulative effect on advocacy by CIF and similar organizations could be considerable. To avoid the burden of registration, such groups may take measures to curb their advocacy even if those measures may not in fact (that is, in law) be required in order to avoid having to register. That is the vice of vagueness — that it causes an organization or an individual to give a law a wide *504 berth, in this instance by forgoing constitutionally protected speech. We should insist, in the name of the First Amendment, that the Illinois legislature speak with greater clarity.