[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16040

_____

D.C. Docket No. 5:11-cv-02449-JEO


ALABAMA DEMOCRATIC CONFERENCE, THE,
an Alabama political action committee,
DR. EDDIE GREENE,
JAMES GRIFFIN,
BOB HARRISON,
EMMITT E. JIMMAR, et al.,

Plaintiffs - Appellees,

versus

ATTORNEY GENERAL, STATE OF ALABAMA,
ROBERT L. BROUSSARD,
in his official capacity as District Attorney for the 23rd Judicial Circuit,
BRYCE U. GRAHAM, JR.,
in his official capacity as District Attorney for the 31st Judicial Circuit,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 19, 2013)

Before BARKETT and JORDAN, Circuit Judges, and SCHLESINGER, District Judge.[*]

PER CURIAM:

The Alabama Democratic Conference, a political action committee ("PAC") under Alabama law, and five of its members (collectively "ADC") sued the Alabama Attorney General and two District Attorneys (collectively "the State") to enjoin the enforcement of Ala. Code § 17-5-15(b), an amendment to Alabama's Fair Campaign Practices Act that prohibits all transfers of funds from one PAC to another.[1] ADC argued that, because under *Citizens United v. FEC*, 558 U.S. 310 (2010), the State cannot regulate the "independent expenditures" of PACs, expenditures which are defined as those made without any prearrangement or coordination with a candidate, *see Colo. Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 610 (1996), it also cannot regulate contributions to PACs that are used only for independent expenditures. Thus, ADC asserted, the transfer ban is unconstitutional as applied to funds that it receives from other PACs and

---

[*]Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

[1] The challenged provision reads as follows: "It shall be unlawful for any political action committee, 527 organization, or private foundation, including a principal campaign committee, to make a contribution, expenditure, or any other transfer of funds to any other political action committee, 527 organization, or private foundation." Ala. Code § 17-5-15(b). This provision has been amended several times since ADC filed its complaint, but the amendments do not affect our analysis.

deposits into a separate bank account that is used only for independent expenditures.[2]

The district court agreed, finding § 17-5-15(b) unconstitutional as applied because it infringed on ADC's First Amendment rights to freedom of speech and freedom of association, and entered an injunction preventing the State from enforcing the law against funds that ADC uses for independent expenditures. The State appeals, arguing that § 17-5-15(b) does not violate the First Amendment or, in the alternative, that disputed issues of material fact preclude summary judgment.

## I

We review the district court's grant of summary judgment *de novo*. *See*, *e.g.*, *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1191 (11th Cir. 2010). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II

It is well-established that political contributions are considered to be political speech, and protected by the First Amendment. *See Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 440. Laws restricting campaign contributions are permissible, however, if the State can establish that they are "closely drawn" to

---

[2] ADC does not argue that § 17-5-15(b) is unconstitutional on its face.

3

serve a "sufficiently important interest." *Buckley v. Valeo*, 424 U.S. 1, 23-25 (1976). *See also McConnell v. FEC*, 540 U.S. 93, 134-36 (2003), *overruled in part by Citizens United*, 558 U.S. at 365-66. The parties agree that Alabama's ban on PAC-to-PAC transfers is subject to this standard of review. *See* Appellants' Br. at 28-30; Appellees' Br. at 16-17.

## A

The State argues that it has "sufficiently important" interests in ensuring transparency and in preventing corruption and the appearance of corruption, and that permitting PAC-to-PAC transfers would facilitate the bribery of public officials, hide the source of funds being used for political purposes, and conceal the identity of political contributors. According to the State, its interests in ensuring transparency and preventing corruption or the appearance of corruption justify the transfer ban.

The State notes that the Supreme Court has recognized that states have a substantial interest in ensuring transparency in the political process. *See*, *e.g.*, *Citizens United*, 558 U.S. at 366-70 (upholding disclosure requirements based on the government's interest in "provid[ing] the electorate with information" and "insur[ing] that the voters are fully informed about the person or group who is speaking" (internal quotation omitted)). But the Supreme Court has relied on the transparency interest only to uphold disclosure requirements, which are "a less

restrictive alternative to more comprehensive regulations of speech." *Id.* at 369. It has never held that a government interest in transparency is sufficient to justify limits on contributions or expenditures. *See id.* (upholding disclosure requirement, but invalidating restrictions on independent expenditures); *McConnell*, 540 U.S. at 196 (upholding disclosure requirements based on government's interest in "providing the electorate with information"); *Buckley*, 424 U.S. at 76 (upholding disclosure requirements for independent expenditures while invalidating limits on expenditures).

The Supreme Court has specifically held that "preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances." *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985). *See also Davis v. FEC*, 554 U.S. 724, 737 (2008) ("[T]he Court has recognized that [contribution] limits implicate First Amendment interests and that they cannot stand unless they are 'closely drawn' to serve a 'sufficiently important interest,' such as preventing corruption and the appearance of corruption."); *SpeechNow.org v. FEC*, 599 F.3d 686, 692 (D.C. Cir. 2010) ("The Supreme Court has recognized only one interest sufficiently important to outweigh the First Amendment interests implicated by contributions for political speech: preventing corruption or the appearance of corruption."). We turn, therefore, to whether the PAC-to-PAC

5

transfer ban sufficiently implicates the State's anti-corruption interest so as to outweigh the imposition on the First Amendment rights of PACs.

According to ADC, because the Supreme Court held in *Citizens United* that "independent expenditures . . . do not give rise to corruption or the appearance of corruption," 558 U.S. at 357, the transfer of funds used for independent expenditures also does not implicate the State's interest in preventing corruption or the appearance of corruption. Not surprisingly, the State disagrees.

The State responds that political operatives have historically used PAC-to-PAC transfers to make campaign contributions while avoiding Alabama's disclosure requirements, thus permitting corruption and the appearance thereof to flourish. The State argues that, if the PAC-to-PAC transfer ban contained an exception for funds used for independent expenditures, such operatives would continue to funnel money to candidates by setting up multiple PACs and making untraceable PAC-to-PAC contributions to a PAC's independent expenditure bank account in return for the recipient PAC's promise to make contributions to a candidate from its separate campaign contributions bank account. *Cf. Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 457 (recognizing that "candidates, donors, and parties test the limits of the current law"). Thus, even though ADC intends to establish two separate bank accounts—one for independent expenditures and one for campaign contributions—and says it will deposit all contributions from

6

other PACs into the independent expenditure account, the State contends that corruption—and the appearance thereof—remain a concern because it is impossible for the State to ensure that funds contributed by other PACs are not in actuality used for campaign contributions. [3]

The State concludes that *Citizens United* does not apply here because ADC makes both independent expenditures and campaign contributions, permitting the State to regulate all funds that ADC receives regardless of how ADC says it intends to use the transferred funds. *Cf. McConnell*, 540 U.S. at 143-54

---

[3] Several courts in other circuits have addressed whether the establishment of separate bank accounts for independent expenditures and campaign contributions by a hybrid organization, such as ADC, sufficiently eliminates the possibility of corruption or the appearance of corruption to render contribution limits unconstitutional.  These courts have reached conflicting conclusions.  *Compare Stop This Insanity, Inc. v. FEC*, 902 F. Supp. 2d 23, 43 (D.D.C. 2012) ("When a single entity is allowed to make both limited direct contributions and unlimited independent expenditures, keeping the bank accounts for those two purposes separate is simply insufficient to overcome the appearance that the entity is in cahoots with the candidates and parties that it coordinates with and supports."), *and Vt. Right to Life Comm., Inc. v. Sorrell*, 875 F. Supp. 2d 376, 406-11 (D. Vt. 2012) (holding that Vermont's anti-corruption interest allowed it to regulate contributions to an independent-expenditure PAC because that PAC was closely intertwined with a group that made contributions to candidates), *with Emily's List v. FEC*, 581 F.3d 1, 12 (D.C. Cir. 2009) ("A non-profit that makes expenditures to support federal candidates does not suddenly forfeit its First Amendment rights when it decides also to make direct contributions to parties or candidates.  Rather, it simply must ensure, to avoid circumvention of individual contribution limits by its donors, that its contributions to parties or candidates come from a [separate] hard-money account."), *Thalheimer v. San Diego*, No. 09-CV-2862-IEG BGS, 2012 WL 177414, at *13 (S.D. Cal. Jan. 20, 2012) (enjoining enforcement of San Diego's contribution limit on PACs to the extent that they engage in independent expenditures, "regardless of whether independent expenditures are the *only* expenditures that those committees make"), *and Carey v. FEC*, 791 F. Supp. 2d 121, 136 (D.D.C. 2011) (granting preliminary injunction preventing the FEC from enforcing contribution limits on PACs that engage in both independent expenditures and campaign contributions so long as the PACs maintain separate bank accounts for the two types of spending).  As we explain in the text, a definitive answer to that question must wait because there are material issues of fact that must first be resolved.

(recognizing that campaign contributions implicate the government's anti-corruption interest); *Buckley*, 424 U.S. at 23-29 (same).[4]

We agree with the State that, at least at this stage of the proceedings, *Citizens United* does not render § 17-5-15(b) unconstitutional as applied. In prohibiting limits on independent expenditures, *Citizens United* heavily emphasized the independent, uncoordinated nature of those expenditures, which alleviates concerns about corruption. *See Citizens United*, 558 U.S. at 357 ("The absence of prearrangement and coordination of an expenditure with the candidate or his agent . . . alleviates the danger that expenditures will be given as a *quid pro*

---

[4] In addition to the threat of corruption and the appearance of corruption posed by multiple, untraceable PAC-to-PAC transfers, the State argues that it has two independent, corruption-based justifications for imposing the transfer ban on all funds that ADC receives from other PACs.

First, the State argues that ADC is so intertwined with the Alabama Democratic Party and Democratic candidates that it is effectively a wing of that political organization. The Supreme Court in *McConnell* held that the government's anti-corruption interest was sufficient to justify restrictions on contributions to political parties for any purpose, including for independent expenditures, because political parties and their affiliates "enjoy a special relationship and unity of interest" with candidates and officeholders such that even "*soft-money* contributions to national party committees have a corrupting influence or give rise to the appearance of corruption." 540 U.S. at 144-45. The State argues that the same rationale applies to contributions to ADC, including those for independent expenditures only.

Second, the State asserts that, given ADC's close relationship with the Alabama Democratic Party and Democratic candidates, there is a strong likelihood that ADC coordinates many of its allegedly "independent" expenditures with candidates, making the expenditures the functional equivalent of direct campaign contributions, which implicate the State's anti-corruption interest. *See Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 446 (finding coordinated expenditures to be "disguised contributions") (quoting *Buckley*, 424 U.S. at 47).

ADC contends that the State has waived both of these arguments by failing to present them in the district court, while the State claims that it raised both arguments at the hearing on the motion for summary judgment. Because we find, based on other grounds, that the district court erred in holding that the State's anti-corruption interest was insufficient as a matter of law to justify the transfer ban, we need not resolve this factual dispute.

*quo* for improper commitments from the candidate.") (internal quotation marks omitted); *id.* at 360 ("By definition, an independent expenditure is political speech presented to the electorate that is not coordinated with a candidate."). *See also SpeechNow.org*, 599 F.3d at 693 ("The independence of independent expenditures was a central consideration in the Court's decision [in *Citizens United*]."). When an organization engages in independent expenditures as well as campaign contributions, as ADC does, its independence may be called into question and concerns of corruption may reappear. At the very least, the public may believe that corruption continues to exist, despite the use of separate bank accounts, because both accounts are controlled and can be coordinated by the same entity. Consequently, we cannot hold as a matter of law that the State's interest in preventing corruption or the appearance of corruption is insufficient to justify contribution limits on funds used for independent expenditures when the receiving organization also makes campaign contributions. *Cf. Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 465 ("We hold that a party's coordinated expenditures, unlike expenditures truly independent, may be restricted to minimize circumvention of constitutional limits.").

In this as-applied challenge, whether the establishment of separate bank accounts by ADC, a hybrid independent expenditure and campaign contribution organization, eliminates all corruption concerns is a question of fact. Indeed, the

Supreme Court in *Citizens United* invalidated limits on independent expenditures only after noting a lack of evidence in the record connecting independent expenditures to corruption. *See Citizens United*, 558 U.S. at 360 (noting a lack of evidence of *quid pro quo* corruption in independent expenditures and "only scant evidence that independent expenditures even ingratiate"). *See also Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 698 (9th Cir. 2010) (finding the anti-corruption interest to be insufficient because of "[t]he City's inability to identify a single instance of corruption, quid pro quo or otherwise, involving contributions to [organizations] for use as independent expenditures").

Here, the State presented ample evidence of possible corruption through PAC-to-PAC transfers to withstand summary judgment. First, ADC and the Alabama Democratic Party make contributions to each other in order to support and advance their common political ideals. Second, many members of the Alabama Democratic Executive Committee are ADC members. Third, in 2010 several candidates or elected officials (e.g., Demetrius Newton, Phil Poole, and Richard Lindsey) made contributions to ADC on or around the dates when commensurate amounts were paid by ADC for "get out the vote" drives in counties contested by these respective candidates. Fourth, ADC itself lists "get out the vote" drives as legitimate expenses drawn from both the restricted candidate fund

10

and the unrestricted "get out the vote" fund.  Because we must view the evidence in the light most favorable to the non-moving party on a motion for summary judgment, *see Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009), we hold that ADC has not met its burden to establish that there is no disputed issue of material fact such that it is entitled to summary judgment.

## B

ADC alternatively contends that, even if the State's anti-corruption interest were sufficiently important to justify a contribution limit, the absolute ban on PAC-to-PAC transfers is not a "closely drawn" means of addressing the State's interest and the entry of partial summary judgment should be affirmed on that ground.  The district court did not reach this question, however, and so the factual record concerning the burdens imposed on PACs by the transfer ban as well as the feasibility and effectiveness of ADC's proposed alternatives is not sufficiently developed for review.

## III

In sum, we conclude that the district court—given the material issues of fact that exist—erred in holding that the State's interest in preventing corruption or the appearance of corruption was insufficient as a matter of law to justify the ban on PAC-to-PAC transfers.  Whether the anti-corruption interest is sufficient in light of the evidence in the record in this case, and whether the transfer ban is a closely

11

drawn means of furthering that interest, given ADC's dual account proposal, are mixed questions of law and fact that should be explored in the first instance by the district court.

We vacate the district court's entry of partial summary judgment in favor of ADC and remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**