**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 16, 2013

Lyle W. Cayce
Clerk

No. 13-50014

TEXANS FOR FREE ENTERPRISE,

Plaintiff–Appellee,

versus

TEXAS ETHICS COMMISSION;
DAVID A. REISMAN, in His Official Capacity as
Executive Director of the Texas Ethics Commission,

Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Texans for Free Enterprise ("TFE") is a political committee formed and incorporated to advocate for candidates in Texas elections. According to its bylaws and a letter it sent to the Texas Ethics Commission, TFE acts exclusively as a "direct campaign expenditure only committee," meaning that it does not

No. 13-50014

make any contributions to candidates or their official committees. Rather, it spends funds only to support its own speech in favor of or against candidates. To engage in that advocacy, it solicits contributions from individuals and corporations.

The Texas Election Code prohibits corporations from "mak[ing] a[n unauthorized] political contribution." Tex. Elec. Code § 253.094(a). The inverse is also prohibited: An individual "may not knowingly accept a political contribution the person knows to have been made in violation of this chapter." *Id.* § 253.003(b). A "[p]olitical contribution" includes campaign contributions, which are defined as "a direct *or indirect* transfer of money, goods, services, or any other thing of value" made to a candidate or political committee "*in connection with a campaign* for elective office." *Id.* § 251.001(2), (3), (5) (emphasis added). The ban on contributions applies regardless of whether the political committee uses that money to make contributions to candidates or makes only direct campaign expenditures.

Fearing that its acceptance of funds from corporations would violate Texas law, TFE sued the Texas Ethics Commission and its Executive Director (jointly, "the Commission") seeking an injunction and a declaration that the relevant portions of the Election Code violate the First Amendment as applied to TFE. In December 2012, despite the 2012 elections' having been concluded, the district court preliminarily enjoined the enforcement of §§ 253.094(a) and 253.003(b) against TFE, and the Commission appealed the injunction. Because the challenged provisions conflict with the First Amendment as applied to TFE, and because the equities are otherwise in favor of preliminary injunctive relief, we affirm.

I.

A preliminary injunction is an "extraordinary remedy" that should be

No. 13-50014

granted only if the movant establishes

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)).  We review a preliminary injunction for abuse of discretion, reviewing findings of fact for clear error and conclusions of law *de novo*.  *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

## II.

We first consider whether TFE has shown a "substantial likelihood of success on the merits."  TFE argues that the Texas Election Code violates its right to free speech by prohibiting it from accepting funds from corporations.  Texas contends that contributions to political committees are not protected under pertinent Supreme Court caselaw and that TFE is therefore unlikely to succeed on the merits.

## A.

In *Citizens United v. Federal Election Commission ("FEC")*, 558 U.S. 310 (2010), the Court addressed a ban on "independent expenditures" by corporations.  A corporation, Citizens United, produced a political film on then-Senator Hillary Clinton, who was running for President.  Under then-applicable federal law, corporations were prohibited from making independent expenditures (*viz.*, those not approved by or coordinated with a candidate) that advocated for or against a candidate.  *Id.* at 319.  Citizens United challenged the prohibition, which the Court ultimately held to be inconsistent with the First Amendment.  *Id.* at 361.

No. 13-50014

The Court emphasized that the only relevant governmental interest in restricting political speech is to avoid corruption or the appearance thereof. *See id.* at 365 (overruling *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 660 (1990), which had found a compelling government interest in preventing corporations from "unfairly influenc[ing] elections"). "[I]ndependent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption" because spending without "prearrangement and coordination" with a candidate "alleviates the danger that expenditures will be given a quid pro quo for improper commitments from the candidate." *Id.* at 357 (citing *Buckley v. Valeo*, 424 U.S. 1, 47 (1976)). Hence, the Court held unconstitutional the bans on independent expenditures by corporations.

Instead of banning Citizens United from producing its movie, the Texas code provisions would instead have forbidden Citizens United from giving money to *another* political group so that *that* group would produce and distribute the film. And the statute would have prohibited Citizens United from accepting donations from other corporations so that Citizens United could produce the film during the election season. This case, then, is one step removed from the facts of *Citizens United*, and we must decide the latter's applicability.

We tread a well-worn path. The Seventh,[1] Ninth,[2] and District of Colum-

---

[1] *See Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 153, 155 (7th Cir. 2011) (holding unconstitutional Wisconsin's $10,000 aggregate annual contribution limit as applied to organizations that engage only in independent expenditures for political speech, after noting that "[t]he threat of quid pro quo corruption does not arise when independent groups spend money on political speech").

[2] *See Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 696 (9th Cir. 2010) (stating that"the need for contribution limitations to combat corruption or the appearance thereof tends to decrease as the link between the candidate and the regulated entity becomes more attenuated"), *abrogated in part on other grounds*, *Farris v. Seabrook*, 677 F.3d 858, 865 (9th Cir. 2012); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1117–21 (9th Cir. 2011).

bia Circuits[3] have considered and held unconstitutional bans or limits on corporate contributions to independent political committees. Indeed, every federal court that has considered the implications of *Citizens United* on independent groups like TFE has been in agreement: There is no difference in principle—at least where the only asserted state interest is in preventing apparent or actual corruption—between banning an organization such as TFE from engaging in advocacy and banning it from seeking funds to engage in that advocacy (or in giving funds to other organizations to allow them to engage in advocacy on its behalf).[4]

We adopt the reasoning of our sister courts and hold that the challenged law is incompatible with the First Amendment. Like the other circuits, we are necessarily agnostic as to whether the strict scrutiny of *Citizens United* or the intermediate scrutiny of *McConnell v. FEC*, 540 U.S. 93, 134–35 (2003), applies. Though no doubt our reasoning would suggest that this case is—in principle—indistinguishable from *Citizens United*,[5] our judgment would be the same under either standard, so we do not need to announce the appropriate test. *See, e.g.*, *SpeechNow.org*, 599 F.3d at 696.

---

[3] *See SpeechNow.org v. FEC*, 599 F.3d 686, 694-95 (D.C. Cir. 2010) (en banc) ("In light of the Court's holding as a matter of law that independent expenditures do not corrupt or create the appearance of quid pro quo corruption, contributions to groups that make only independent expenditures also cannot corrupt or create the appearance of corruption[,]" and so "government has no anti-corruption interest in limiting contributions to an independent expenditure group.").

[4] *See also Vt. Right to Life Comm., Inc. v. Sorrell*, 875 F. Supp. 2d 376, 404 (D. Vt. 2012); *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 697 (W.D. Mich. 2010); *Republican Party of N.M. v. King*, 850 F. Supp. 2d 1206, 1215 (D.N.M. 2012).

[5] *See* J. Robert Abraham, *Saving* Buckley*: Creating A Stable Campaign Finance Framework*, 110 COLUM. L. REV. 1078, 1121–22 (2010) (arguing that strict scrutiny is the appropriate standard of review for donations to independent political advocacy groups).

No. 13-50014

B.

The Commission urges that these circuits are mistaken in light of *California Medical Association v. FEC*, 453 U.S. 182, 201 (1981) ("*Cal-Med*"), in which a four-Justice plurality opined that contribution limitations on multi-candidate political committees are like contribution limits to a candidate's official campaign committee and are therefore permissible. *Cal-Med* is not helpful to the Commission, however.

First, and most importantly, *Cal-Med* is immediately distinguishable on its facts. It involved contributions to multi-candidate political action committees ("PACs") that, by definition, had to make direct monetary contributions to five or more federal candidates. Thus, *Cal-Med* did not involve the kind of independent expenditures that TFE wishes to make. Secondly, *Cal-Med* is only a plurality opinion. Justice Blackmun, the fifth member of the majority, would have held (had the facts presented themselves) that contributions to political committees that made only independent expenditures could not be limited.[6]

The Commission argues that corporations have plenty of other opportunities for speech—they may speak themselves or create their own independent

---

[6] *Cal-Med*, 453 U.S. at 203 (Blackmun, J., concurring) ("I stress, however, that this analysis suggests that a different result would follow if § 441a(a)(1)(C) were applied to contributions to a political committee established for the purpose of making independent expenditures, rather than contributions to candidates."). *Contra Emily's List v. FEC*, 581 F.3d 1, 25 (D.C. Cir. 2009) (Brown, J., concurring) (concluding that Justice Blackmun's concurrence in *Cal-Med* would allow limits on contributions to political committees). Judge Brown's concurrence, however, does not appear to be an accurate restatement of the law in the D.C. Circuit in the wake of *SpeechNow.org*.

The Commission directs our attention to Judge Michael's dissent in *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 332 (4th Cir. 2008), in which he contended that Justice Blackmun's concurrence coupled with the four-member plurality meant that contribution limitations on independent committees are permissible. That view is unpersuasive. Judge Michael's dissent relies, in part, on interests apart from the anti-corruption interest identified as the only permissible governmental interest in *Citizens United*. That is understandable, though, because the dissent was issued before the *Citizens United* Court struck down the relevant parts of *McConnell* and *Austin* on which Judge Michael had relied.

6

No. 13-50014

PACs.  The Supreme Court, however, has expressly rejected that line of reasoning, *see Citizens United*, 558 U.S. at 337, as do we.

## III.

For the reasons we have explained, TFE has shown a likelihood of success on the merits, but that is only a necessary, not a sufficient, condition for a preliminary injunction.  It must have also demonstrated that there is a substantial threat of irreparable injury outweighing the harms of granting the preliminary injunction and that the grant will not disserve the public interest.

The Commission contends there was no such showing because TFE's primary concern was being able to collect contributions and make expenditures during the 2012 election season, which has since passed.  We have repeatedly held, however, that "[t]he 'loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.'"[7]  TFE's ability to speak is undoubtedly limited when it cannot raise money to pay for speech.  Consistent with our precedents, then, TFE has established irreparable harm.

The Commission is not able to articulate the harm it will suffer if enjoined from enforcing the relevant code provisions.  It notes the same vague, unsupported anti-corruption grounds, which we have already explained to be without merit.  To the contrary, "injunctions protecting First Amendment freedoms are always in the public interest."  *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

Because TFE is likely to succeed on the merits, and because the manifest

---

[7] *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (Former 5th Cir. Nov. 1981)); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

equities weigh in favor of equitable relief, the district court did not abuse its discretion by issuing a preliminary injunction.  The order granting the injunction is AFFIRMED.