# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-12-00081-CV
---

**James Sylvester, Ken Yarborough, and Josephine Miller, Appellants**

**v.**

**Texas Association of Business; Bill Hammond; BACPAC; CIGNA Healthcare of Texas, Inc.; and Connecticut General Life Insurance Company, Appellees**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-02-004226, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING
---

### O P I N I O N

Appellants James Sylvester, Ken Yarborough, and Josephine Miller, candidates for the Texas House of Representatives in the 2002 general election, brought suit against appellees Texas Association of Business (TAB), Bill Hammond, the Texas Business and Commerce Political Action Committee (BACPAC), CIGNA Healthcare of Texas, Inc., and Connecticut General Life Insurance Company, alleging Election Code violations. Appellants sought damages based on "voter education" mailers that TAB disseminated and alleged in-kind political contributions from TAB to BACPAC during the 2002 general election cycle. *See* Tex. Elec. Code §§ 253.131, 254.231. The trial court granted final summary judgment in favor of appellees. On appeal, appellants raise six issues challenging the judgment. For the reasons that follow, we affirm.[1]

---

[1] We grant appellants' motion for leave to file supplemental brief and appellees CIGNA Healthcare of Texas, Inc. and Connecticut General Life Insurance Company's motion for leave to file supplemental authority.

## BACKGROUND

TAB is a non-profit corporation whose stated mission is "to build the best business climate on the planet through legislative action on the state and federal levels." TAB "lobbies on every issue that impacts business to ensure that employers' opinions are being heard." Bill Hammond is TAB's president and chief executive officer.

A few months before the 2002 general election, TAB solicited money from corporations to fund a "voter education project." Hammond sent a memorandum dated August 22, 2002, to "Texas Business Leaders." He stated that the goal was to raise one-million dollars and that "[o]ur strategy [was] simple: to educate voters about pro-business candidates through an aggressive direct mail program." He also informed the corporations that "[c]ontributions for this purpose [were] not reportable" and provided an opinion letter from a Texas ethics attorney "regarding the legality of corporate expenditures for voter education programs." In his letter, the attorney stated that corporate expenditures for "issue ads" were not reportable to the Texas Ethics Commission (TEC) or "any other governmental body." In response, corporations, including CIGNA and CT General, contributed money to TAB in excess of $1.8 million for the "voter education project." TAB spent these funds to disseminate mailers that specifically addressed candidates for the Texas House of Representatives and the Texas Senate.

TAB also sponsors BACPAC, a voluntary, non-profit unincorporated political committee. TAB did not appoint a campaign treasurer or file reports with the TEC during the 2002 election cycle, but BACPAC did. BACPAC accepted and made campaign contributions in the 2002 general election, disclosing the contributions in reports filed with the TEC.

2

**Litigation Commenced**

Appellants brought this suit in 2002 seeking damages under the Election Code based on the "voter education" mailers and alleged services provided by TAB employees to BACPAC. *See* Tex. Elec. Code §§ 253.131, 254.231.[2] Appellants were unsuccessful candidates for the Texas House of Representatives in the 2002 general election.[3] Some of the mailers provided information concerning the positions of appellants, their opponents, or both on specific issues.

Appellants contended that TAB violated provisions of the Election Code that apply to corporations and provisions that apply to political committees. Appellants alleged that "TAB constituted a political committee under the election code" by collecting funds and then spending them in support or in opposition to various legislative candidates. *See id*. § 251.001(12) (defining "political committee").[4] Appellants urged that, as a political committee, TAB accepted illegal political contributions and made illegal political expenditures because it did not have a campaign

---

[2] Section 253.131(a) of the Election Code reads: "A person who knowingly makes or accepts a campaign contribution or makes a campaign expenditure in violation of this chapter is liable for damages as provided in this section." Tex. Elec. Code § 253.131(a). Section 254.231(a) of the Election Code similarly states:

> A candidate or campaign treasurer or assistant campaign treasurer of a political committee who fails to report in whole or in part a campaign contribution or campaign expenditure as required by this chapter is liable for damages as provided by this section.

*Id*. § 254.231(a).

[3] James Sylvester lost to Jack Stick, Ken Yarborough lost to Dwayne Bohac, and Josephine Miller lost to Gene Seaman.

[4] The Election Code defines a political committee as "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." *Id*. § 251.001(12).

3

treasurer as required by chapter 253 of the Election Code and had failed to report in accordance with chapter 254 of the Election Code. *See id.* §§ 253.004(a) ("A person may not knowingly make or authorize a political expenditure in violation of this chapter."), 253.031(b) (requiring political committee to have campaign treasurer appointment in effect before accepting political contributions or making political expenditures totaling more than $500), 253.037(a) (prohibiting general-purpose committee from making political expenditures or contributions during 60-day period following the filing of campaign treasurer appointment), 254.039 (requiring reporting for certain general-purpose committees), 254.153 (requiring semiannual reporting for general-purpose committees), 254.154 (requiring additional reporting for general-purpose committees involved in election). Based on their contention that TAB was a political committee, appellants also alleged that CIGNA and CT General violated the Election Code by making illegal corporate political contributions. *See id.* § 253.094(a).[5]

In the alternative, appellants alleged that TAB as a corporation failed to report in accordance with former section 253.062 of the Election Code. *See* Act of June 18, 1997, 75th Leg., R.S., ch. 864, § 244, 1997 Tex. Gen. Laws 2742, 2778, *repealed by* Act of June 17, 2011, 82d Leg., R.S., ch. 1009, § 6(2), 2011 Tex. Gen. Laws 2554, 2556.

Appellants' claims concerning the alleged services of TAB employees to BACPAC were based on TAB's status as a corporation. Appellants contended that TAB, CIGNA, and CT

---

[5] In 2002, section 253.094(a) limited corporate political contributions and expenditures to those expressly allowed in the subchapter. *See* Act of June 19, 1987, 70th Leg., R.S., ch. 899, § 1, 1987 Tex. Gen. Laws 2995, 3009 (amended 2011). In 2011, section 253.094(a) was amended to read:

> A corporation or labor organization may not make a political contribution that is not authorized by this subchapter.

Tex. Elec. Code § 253.094(a).

General made illegal corporate political contributions and that BACPAC illegally accepted corporate political contributions. *See* Tex. Elec. Code §§ 253.003(b) ("A person may not knowingly accept a political contribution the person knows to have been made in violation of this chapter."), .094(a) ("A corporation or labor organization may not make a political contribution that is not authorized by this subchapter.").

As to Hammond, appellants alleged that he "either made or had final approval over all material decisions" regarding TAB's alleged political expenditures and contributions. Appellants also alleged that appellees engaged in a conspiracy to violate the Election Code.[6] Appellants sought damages against all of the appellees under section 253.131 and against TAB under section 254.231. *See id*. §§ 253.131, 254.231.

**Summary Judgment Motions**

Appellees filed traditional motions for summary judgment. *See* Tex. R. Civ. P. 166a(c). Citing *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), CIGNA and CT General moved for summary judgment based on their assertions that they gave money to TAB solely to fund the mailers and that the mailers were independent of and not coordinated with any campaign or officeholder and, therefore, protected by the Constitution as independent expenditures. They urged that, after *Citizens United*, it was undisputed they, as well as TAB, could make these types of direct

---

[6] Appellants have not challenged the summary judgment ruling in favor of appellees as to the conspiracy claim. Thus, appellants have waived any error with regard to that claim. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (per curiam) (concluding that court of appeals erred by reversing summary judgment on particular claim because appellant did not complain about summary judgment on that claim).

expenditures on their own and, therefore, that they could combine to do the same thing. They also asserted that they were not subject to chapter 254 of the Election Code, which addresses reporting requirements, and that there was no civil conspiracy liability for committing lawful acts.

Evidence attached to their motion included copies of Hammond's memorandum dated August 22, 2002, the ethics lawyer's opinion letter that was attached to the memorandum, copies of the mailers, an indictment of TAB concerning the mailers, an order quashing the indictment in June 2006, discovery responses by appellants, and a letter ruling in another civil case addressing similar claims by losing candidates against TAB and other corporations. In that case, the trial court granted summary judgment for the corporate defendants who also had donated money to TAB for its "voter education" mailers in the 2002 general election cycle.

TAB, Hammond, and BACPAC moved for summary judgment on the ground that all of appellants' claims for monetary damages were factually predicated on TAB's use of corporate funds in each of their particular legislative races. They then argued that the Election Code provisions did not apply to TAB's "public education program" and, therefore, that appellants' claims failed as a matter of law. They cited *Buckley v. Valeo*, 424 U.S. 1 (1976), to argue that chapter 253 of the Election Code did not apply because none of TAB's mailers were express advocacy. The mailers did not contain words such as "vote for" or "defeat." *See id.* at 44 n.52 (setting forth examples of "express words of advocacy" such as "'vote for, elect, support'"); *see also Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000) (holding that "'direct campaign expenditure' by an individual in a candidate election includes only those expenditures that 'expressly advocate' the election or defeat of an identified candidate"). TAB, Hammond, and BACPAC alternatively argued that, if chapter

6

253 of the Election Code did apply to the mailers, its application was unconstitutional, vague, overbroad, and violated their First Amendment rights.

Citing *Citizens United*, they also argued that, although the Texas Legislature could require disclosure of corporate expenditures, that it had yet to do so and that, even if the mailers were express advocacy, the legislature does not have the authority to prevent TAB from using corporate funds to disseminate the mailers. They further argued that section 254.231 of the Election Code did not apply to them, that TAB was not a political committee, and that, even if it was, there was no need to segregate contributions for "administrative expenses." As to the alleged in-kind contributions by TAB to BACPAC, they contended that TAB's employees' services were unrelated to the mailers and that appellants' allegations did not include a violation of section 253.002 as a basis for their claims.

Appellees' motions were supported by affidavits by Hammond. In one of his affidavits, he testified in relevant part:

3.    During the 2002 state election cycle TAB received in excess of $1.8 million from corporations. The entirety of this money was used to fund TAB's voter education mailers, as described below.

4.    TAB independently provided voters, via eighty-eight (88) direct mailers, with information on candidates for the Texas House of Representatives and the Texas Senate. These mailers provided by TAB highlighted a particular candidate's view on specific issues, such as lawsuit reform, healthcare and taxes. These voter education pieces were informational only, and did not encourage readers to vote for or against any candidate. Additionally, these mail pieces did not use any words or phrases, such as "vote for," "elect," "support," "cast your ballot for," "vote against," "defeat" or "reject." TAB prepared these issue advertisements on their own volition, without consultation or coordination or cooperation from any candidate or agent thereof.

**Responses to Summary Judgment Motions**

Appellants filed responses to the motions with supporting evidence. They contended that TAB was a corporation and a political committee under the Election Code. Appellants also argued that the mailers were express advocacy and, therefore, "campaign expenditures" subject to the Election Code. *See* Tex. Elec. Code § 251.001(7) (defining "campaign expenditure" as "an expenditure made by any person in connection with a campaign for an elective office or measure"). They further argued that TAB violated section 253.094(a) of the Election Code by making corporate political contributions to BACPAC and that BACPAC violated section 253.003(b) by accepting corporate political contributions from TAB, which BACPAC then used in connection with appellants' elections. *See id.* §§ 253.003(b), .094(a).

As to CT General and CIGNA, appellants contended, based on their position that TAB was a political committee, that CT General and Cigna Healthcare violated the Election Code by making contributions to TAB without restricting TAB's use of their money to administrative purposes. *See id.* §§ 253.094(a), 253.100 (limiting corporate political contributions to general-purpose committee "to finance the establishment or administration" of the committee); *Ex Parte Ellis*, 309 S.W.3d 71, 88 (Tex. Crim. App. 2010) (addressing corporate expenditures to general-purpose committees under section 253.100). They also urged that the contributions by CT General and CIGNA to TAB violated the Election Code because TAB made in-kind corporate contributions to BACPAC, and BACPAC made political contributions to candidates in the 2002 general election cycle. Appellants, however, agreed that they did not have claims against CIGNA and CT General based on chapter 254.

8

Appellants' evidence included copies of the mailers, transcripts and exhibits from depositions of Hammond, excerpts of a portion of the hearing in 2003 on TAB's motion to quash, BACPAC's campaign finance reports for the 2002 general election, and TAB's 2005 indictment and plea agreement concerning the alleged TAB employees' services provided to BACPAC. The plea agreement reflects that TAB entered a guilty plea on the misdemeanor offense of unlawful direct campaign expenditures under section 253.002 of the Election Code, and the State and TAB agreed to enter into a deferred prosecution agreement as to a separate count. The campaign finance reports showed that BACPAC made political contributions to appellants' opponents. The excerpts from the hearing in 2003 were of the testimony from one of TAB's employees. She testified that she, as well as Hammond and Jack Campbell,[7] worked on political projects for BACPAC during the 2002 general election cycle.

After a hearing in 2011, the trial court granted appellees' motions and signed a final summary judgment in their favor. This appeal followed.

**ANALYSIS**

Appellants bring six issues challenging the trial court's summary judgment ruling. In their first and third issues, they contend that TAB was a political committee under the Election Code and, therefore, that the trial court erred by granting summary judgment on their claims that TAB unlawfully accepted campaign contributions, unlawfully made campaign expenditures, and failed to file required reports with the TEC. In their second issue, appellants contend that, even if

---

[7] Campbell was also a TAB employee.

9

TAB was not a political committee, that it made unlawful direct campaign expenditures by failing to report such expenditures to the TEC. In their fourth and fifth issues, appellants contend that the trial court erred by granting summary judgment as to their claims that were based on TAB's alleged in-kind corporate political contributions to BACPAC. In their sixth issue, appellants contend that the trial court erred by granting summary judgment regarding their claims that CT General and CIGNA made unlawful corporate political contributions to TAB.

**Standard of Review**

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or must conclusively establish each element of an affirmative defense. Tex. R. Civ. P. 166a(c); *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A. de C.V.*, 49 S.W.3d 347, 350–51 (Tex. 2001); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

When the trial court does not specify the grounds for its summary judgment, as is the case here, the appellate court must affirm the summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). When reviewing a summary judgment, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *see Dorsett*, 164 S.W.3d at 661.

10

Appellants' issues also concern statutory construction. We review matters of statutory construction de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009); *Osterberg*, 12 S.W.3d at 38. "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). We also interpret statutes, if possible, in a way that makes them constitutional. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009).

**TAB's "Voter Education" Mailers**

Appellants' first and third issues challenge the trial court's summary judgment regarding appellants' claims that were based on TAB's "voter education" mailers. Appellants contend that the trial court erred by granting summary judgment on these claims because TAB, by its actions, was a political committee and, as such, unlawfully accepted political contributions and unlawfully made campaign expenditures to fund the mailers without appointing a campaign treasurer or filing required reports. *See* Tex. Elec. Code §§ 253.004(a), 253.031(b), 253.037(a), 254.039, 254.153, 254.154.

The Election Code defines a "political committee" to mean "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." *Id.* § 251.001(12). Appellants urge that the evidence raises a fact issue regarding whether TAB was a political committee because the summary judgment evidence was more than sufficient to show that

11

a "principal purpose" of TAB was to accept political contributions—evidenced by the payments from the corporations—and to make political expenditures, including spending funds on the mailers. *See id*. § 251.001(5), (6), (7), (12) (defining "political contribution," "expenditure," "campaign expenditure," and "political committee").[8] They point to the undisputed evidence that TAB accepted money from corporations, including CT General and CIGNA, and spent in excess of $1.8 million to fund the mailers. It was also undisputed that TAB did not appoint a campaign treasurer or file reports with the TEC during the 2002 general election. If TAB was a political committee, it violated the Election Code's requirements to appoint a campaign treasurer and file reports with the TEC. *See id*. §§ 253.004(a), 253.031(b), 253.037(a), 254.039, 254.153, 254.154.

The parties join issue as to whether the mailers were "express advocacy" and "campaign expenditures" subject to the Election Code to support their competing positions as to whether TAB was a political committee. *See id*. § 251.001(7) (defining "campaign expenditure"); *Citizens United*, 558 U.S. at 324–25 (describing "functional equivalent" of express advocacy); *Osterberg*, 12 S.W.3d at 51 (holding that "'direct campaign expenditure' by an individual in a candidate election includes only those expenditures that 'expressly advocate' the election or defeat of an identified candidate"). Guided by the plain language of the Election Code and the directive from the United States Supreme Court in *Citizens United*, however, we need not determine whether the mailers were "express advocacy" or "campaign expenditures."

---

[8] The Election Code defines a political expenditure to include a campaign expenditure and, as previously stated, a campaign expenditure means "an expenditure made by any person in connection with a campaign for elective office or on a measure." Tex. Elec. Code § 251.001(7), (10).

TAB, in its capacity as a corporation, was subject to subchapter D of chapter 253, which addresses restrictions and limitations that expressly apply to corporations and labor organizations. *See* Tex. Elec. Code. §§ 253.091–.104. In 2002, section 253.094 prohibited corporations from making political expenditures unless expressly authorized in subchapter D. *See* Act of June 19, 1987, 70th Leg., R.S., ch. 899, § 1, 1987 Tex. Gen. Laws 2995, 3009 (amended 2011). Political expenditures include campaign expenditures. Tex. Elec. Code § 251.001(10). Assuming without deciding then that the mailers were "campaign expenditures," TAB—as a corporation—would have violated section 253.094 as it existed in 2002 because no other provision within subchapter D authorized corporations to make this type of political expenditure. *See id*.

The United States Supreme Court in *Citizens United*, however, made clear that corporations have the same First Amendment free speech rights as individuals to make independent political expenditures. *See* 558 U.S. at 341–42, 356, 365. In that case, Citizens United, a non-profit corporation that was funded by donations from individuals and for-profit corporations, challenged a federal statute that prohibited it from making independent political expenditures. *Id*. at 318–19. The Supreme Court granted Citizens United relief, holding that the ban on corporate-funded independent expenditures violated the First Amendment. *Id.* at 341–42, 356, 365. Similar to the expenditures at issue in *Citizens United*, the mailers at issue here were independent from any campaign or candidate. In his affidavit, Hammond testified that TAB prepared the mailers "on their own volition, without consultation or coordination from any candidate or agent thereof." Appellants did not present contrary evidence. Thus, applying the analysis of *Citizens United*, even if the mailers were political expenditures and the "functional equivalent of express advocacy," the

First Amendment does not permit prohibiting a corporation, such as TAB, from disseminating the mailers.[9] *See id.* at 372 (concluding unconstitutional to restrict corporate independent expenditures); *see also* Tex. Elec. Code § 251.001(8) (defining "direct campaign expenditure").

Further, appellants have not cited, and we have not found, post-*Citizens United* authority that would support appellants' position that an incorporated trade association such as TAB, by seeking money from corporations to fund, and then funding, constitutionally protected, independent expenditures, subjected itself to the 2002 regulatory scheme directed to political committees. *See Citizens United*, 558 U.S. at 341–42, 356, 365; *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 538 (5th Cir. 2013) (noting "no difference in principle—at least where the only asserted state interest is in preventing apparent or actual corruption—between banning an organization such as TFE from engaging in advocacy and banning it from seeking funds to engage in that advocacy (or in giving funds to other organizations to allow them to engage in advocacy on its behalf)").

We are also mindful that we interpret statutes, if possible, in a way that makes them constitutional. *See City of Pasadena*, 292 S.W.3d at 19. Appellants do not contend that TAB was a sham corporation or that it was formed solely for the purpose of "accepting political contributions or making political expenditures" but argue that its actions surrounding the mailers in 2002 create a fact issue relating to "a principal purpose" in the definition of political committee. *See* Tex. Elec.

---

[9] Appellants do not contend otherwise. They state in their brief: "Appellants do not contest that corporations have the legal right to spend their own money to try and sway voters towards their own preferred slate of candidates."

14

Code § 251.001(12).[10]  Were we to interpret "principal purpose" in the definition of "political committee" as suggested by appellants so that corporations making independent political expenditures morph into political committees under the Election Code as it existed in 2002 when they made the expenditures, the definition would be an affront to the First Amendment.[11]  *See Citizens United*, 558 U.S. at 341–42, 356, 365.

Further, appellants' suggested definition of "political committee" is inconsistent with the framework of the Election Code's overall scheme.  *See Parker*, 249 S.W.3d at 396 (considering entire act and not isolated portions when interpreting statutes).  The Election Code's overall scheme treats corporations and political committees as distinct types of entities and subjects them to incompatible provisions.  *See, e.g.*, Tex. Elec. Code §§ 253.031–.043 (provisions directed to political committees, officeholders, and candidates); §§ 253.091–.104 (provisions directed to corporations and labor organizations).  Considering the context of the Election Code's overall scheme and the Supreme Court's directive, we decline to interpret the definition so broadly.  *See Citizens United*, 558 U.S. at 341–42, 356, 365; *City of Pasadena*, 292 S.W.3d at 19; *see also* Tex. Elec. Code § 251.001(12); *Parker*, 249 S.W.3d at 396; *King St. Patriots v. Texas Democratic Party*,

---

[10]  As previously stated, the definition of a political committee requires that the group have as "a principal purpose accepting political contributions or making political expenditures." Tex. Elec. Code § 251.001(12).  Applying their common meaning, "purpose" means "[t]he object toward which one strives or for which something exists; goal; aim." *American Heritage Dictionary of the English Language* 1062 (1973).  "Principal" means "[f]irst, highest, or foremost in importance, rank, worth, or degree; chief." *Id*. at 1041.

[11]  The dissent misstates the bases of our holding.  The dissent argues that a group of persons could have more than one principal purpose but, even if that were the case, that is not a controlling issue here. The controlling issue is the impact and reach of the holding of *Citizens United* on the Election Code provisions at issue, including the scope of the political committee definition in the context of a corporation's constitutional right to make independent political expenditures.

15

__ S.W.3d __, No. 03-12-00255-CV, 2014 Tex. App. LEXIS 13058, at *35–36 (Tex. App.—Austin Dec. 8, 2014, no pet. h.) (in context of First Amendment challenge to definition of "political committee," applying common meaning of "principal" and "purpose" and "[v]iewing definitions as a whole and in context with each other").

Appellants cite a TEC ethics advisory opinion to support their position that TAB is subject to the provisions for both corporations and political committees under the Election Code. *See* Op. Tex. Ethics Comm'n No. 242 (1995); *see also* Tex. Elec. Code § 253.092 (addressing treatment of incorporated political committee). In the opinion, the TEC concluded that a political committee could incorporate solely for liability purposes without subjecting itself to the limitations that the Election Code places on corporations. *See* Op. Tex. Ethics Comm'n No. 242. Section 253.092 of the Election Code similarly states that a political committee that "incorporates for liability purposes only" is not considered to be a corporation for purposes of subchapter D.[12] *See* Tex. Elec. Code § 253.092. The opinion and section 253.092 make sense in the scheme of chapter 253. Otherwise, an incorporated political committee would be foreclosed from provisions in subchapter B, such as the allowance of campaign contributions, that conflict with restrictions in subchapter D, such as the prohibition from making political contributions. *See id.* §§ 251.001(12), 253.031(c) (allowing campaign contributions), 253.094(a) (prohibiting contributions); *see also Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or

---

[12] The dissent also states that our holding is based on the conclusion that a corporation can never be a political committee, but, as we acknowledge, section 253.092 of the Election Code allows a political committee to incorporate. Again, that is not a controlling issue here.

16

superfluous."). But, in the context of independent expenditures, it does not follow that the inapplicability of section 253.092 to a corporation supports subjecting the corporation to Election Code provisions applicable to political committees.[13]

Appellants did not present evidence that contradicted TAB's evidence that its principal purpose was to be an incorporated trade association for the business community. In one of his affidavits, Hammond testified that TAB "promotes the free enterprise system by working to improve the Texas business climate and to help make our state's economy the strongest in the world" and that it "lobbies on every issue that impacts business to ensure that employers' opinions are being heard." The summary judgment evidence also included copies of TAB's budgets for 2001 and 2002 and business reports to its members. The budgets and reports conform with Hammond's testimony regarding TAB's principal purpose as a trade association. One of the reports states that TAB's mission is "to build the best business climate on the planet through legislative action on the state and federal levels."

Here, the evidence was conclusive that TAB did not incorporate solely for liability purposes, that its principal purpose was to be a trade association for the business community, and that its actions surrounding the mailers were independent from campaigns and candidates. Given

---

[13] After all, even if a corporation complied with the regulations applicable to political committees, it still would have violated the Election Code as it existed in 2002 if it made independent political expenditures. *See, e.g.*, Tex. Elec. Code §§ 253.031(c) (allowing political committees to make campaign contributions and expenditures after appointment of campaign treasurer), former 253.094(a) (prohibiting corporation from making political contributions and expenditures unless authorized by subchapter); *see also id*. § 251.001(3) (defining "campaign contribution"), (5) (defining "political contribution"); *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 931 (Tex. 2010) ("Courts must not give the words used by the Legislature an 'exaggerated, forced, or constrained meaning.'" (quoting *City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002))).

17

this uncontested evidence, we conclude that TAB established as a matter of law that its actions surrounding the mailers did not subject it to the Election Code provisions directed to political committees. *See* Tex. R. Civ. P. 166a(c). On this basis, we overrule appellants' first and third issues.

**Former Section 253.062**

In their second issue, appellants contend in the alternative that TAB violated former section 253.062 of the Election Code by making direct campaign expenditures without reporting such expenditures. *See* Act of June 18, 1997, 1997 Tex. Gen. Laws at 2778. In 2002, section 253.062 prohibited an "individual" from making direct campaign expenditures exceeding $100 unless the individual complied with chapter 254 as if the individual were a campaign treasurer of a political committee. *See id.*[14]

Appellants cite a TEC 2010 advisory opinion to support their position that TAB in 2002 was subject to former section 253.062. *See* Op. Tex. Ethics Comm'n No. 489 (2010). In that opinion, TEC concluded that corporations that make direct campaign expenditures were required to comply with section 253.062. Appellants contend that we should defer to TEC's interpretation of the statute. "A reasonable construction of a statute by the administrative agency charged with its enforcement is entitled to great weight." *Osterberg*, 12 S.W.3d at 51 (citing *State v. Public Util. Comm'n*, 883 S.W.2d 190, 196 (Tex. 1994); *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994)). We may not defer to an agency's interpretation of a statute, however, that is inconsistent with the language

---

[14] In 2011, the legislature enacted section 254.261. *See* Act of May 24, 2011, 82d Leg., R.S., ch. 1009, § 5, 2011 Tex. Gen. Laws 1009. Section 254.261 requires a "person" to file reports for direct campaign expenditures exceeding $100. *See* Tex. Elec. Code § 254.261. Thus, a corporation's direct campaign expenditures are now subject to disclosure. *See id.*

of the statute.  *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) (noting that courts normally defer to agency's interpretation of statute that is vague or ambiguous unless "plainly erroneous or inconsistent with the language of the statute").

The text of former section 253.062 is not vague or ambiguous.  The statute expressly states that it applies to an "individual not acting in concert with another person."  Had the legislature intended a different or broader classification, it could have said so.  *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 636 (Tex. 2010).  In its 2010 opinion, the TEC recognized as much.  *See* Op. Tex. Ethics Comm'n No. 489.  It noted that *Citizens United* created a gap in the disclosure requirements for corporations, labor organizations, and other persons:

> Title 15 does not explicitly state that a corporation, labor organization, or certain other persons[ ] must file reports to disclose direct campaign expenditures made to support or oppose a candidate. . . .  Thus, title 15 did not specifically require disclosure of such expenditures because it simultaneously prohibited them.  *Citizens United* removed our ability to restrict direct campaign expenditures by corporations, labor organizations, and other persons.  This result has created a gap or ambiguity in title 15 that prompts us to address whether the absence of statutory language specifically addressing these direct campaign expenditures made to support or oppose candidates reflects the legislature's intent that title 15, in the circumstances following *Citizens United*, require such expenditures to be disclosed.

*Id*.  As the TEC recognized in its 2010 opinion, pre-*Citizens United*, the Election Code limited the types of political expenditures corporations could make.  It follows that the legislature could not have intended for a corporation to disclose prohibited expenditures given that a corporation was not allowed to make them in the first place.  There was no need to have a disclosure requirement for corporations because there was nothing to disclose.

19

Given the plain language of former section 253.062, we decline to expand the meaning of "individual" to subject a corporation to liability for failing to report direct campaign expenditures in 2002. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439 ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."); *Scott*, 309 S.W.3d at 930–31. On this basis, we overrule appellants' second issue.

**TAB Employees' Services to BACPAC**

Appellants' fourth and fifth issues challenge the trial court's summary judgment rulings in favor of TAB and BACPAC as to appellants' claims regarding the alleged employees' services provided by TAB to BACPAC. In their fourth issue, appellants contend that TAB as a corporation violated section 253.094(a) because its employees' services were in-kind political contributions and TAB did not present evidence that it restricted the contributions to administrative matters. *See* Tex. Elec. Code §§ 253.094(a) (prohibiting corporations from making political contributions), 253.100; *Ex parte Ellis*, 309 S.W.3d at 88 (discussing section 253.100); *see also* Tex. Elec. Code § 251.001(2), (3), (5) (defining "contributions," "political contributions" and "campaign contributions"). In their fifth issue, based on the same alleged employees' services, appellants contend that BACPAC violated section 253.003(b) by accepting the in-kind political contributions from TAB. *See* Tex. Elec. Code § 253.003(b) ("A person may not knowingly accept a political contribution the person knows to have been made in violation of this chapter.").

In their summary judgment motions, TAB and BACPAC challenged these claims on the ground that the mailers were "not factually connected with the criminal charges to which TAB

20

plead guilty" and appellants did not allege a section 253.002 violation. The evidence was undisputed that TAB pleaded guilty to the misdemeanor offense of unlawful direct campaign expenditures under section 253.002 of the Election Code concerning TAB employees' services to BACPAC, and not to making unlawful in-kind corporate political contributions. *See id*. § 253.002 (prohibiting person from knowingly making or authorizing direct campaign expenditures with exceptions); *see also id*. § 251.001(2), (3), (5). Further, appellants in their pleadings did not assert a violation of section 253.002 to support their request for statutory damages as to the alleged in-kind employees' services, but a violation of section 253.094(a) by TAC and section 253.003(b) by BACPAC. *See id*. §§ 253.003(b) (prohibiting knowingly accepting political contributions made in violation of chapter), .094 (prohibiting corporations from making political contributions not authorized by subchapter D).[15] On this basis, we overrule appellants' fourth and fifth issues.

**Contributions from CIGNA and CT General to TAB**

In their sixth issue, appellants contend that CT General and CIGNA were not entitled to summary judgment on appellants' claims that they made unlawful corporate political contributions to TAB. Appellants make similar arguments to those made in their first and third issues, arguments based on their position that TAB was a political committee. They contend that CIGNA and CT General violated the Election Code by making contributions to a political committee—TAB—and

---

[15] In the section of their Tenth Amended Original Petition titled "Causes of Action," appellants asserted that TAB violated sections 253.004(a), 253.031(b), and 253.037(a) by making political expenditures without a campaign treasurer appointment. *See* Tex. Elec. Code §§ 253.004(a), .031(b), .037(a). As to the alleged "corporate political contributions to BACPAC," appellants specifically asserted that TAB violated section 253.094(a) and BACPAC violated section 253.003(b). *See id*. §§ 253.003(b), .094(a).

21

then failing to restrict their contributions to administrative purposes. *See id*. §§ 253.094(a), 253.100; *Ex parte Ellis*, 309 S.W.3d at 88.

Given our conclusion that the summary judgment evidence established as a matter of law that TAB's conduct surrounding the mailers did not subject it to the restrictions applicable to political committees, it follows that CT General and CIGNA did not violate the Election Code by donating money to TAB to fund the mailers and that such payments—because they were not made to a candidate or political committee—did not fall within the definition of contribution under the Election Code. *See* Tex. Elec. Code § 251.001(3), (5) ("political contribution" includes a "campaign contribution" which means a "contribution to a candidate or a political committee . . ."). Appellants do not dispute that CT General and CIGNA could have funded and sent the mailers themselves as independent political expenditures. Appellants also have failed to cite, and we have not found, post-*Citizens United* authority that would support prohibiting corporations from funding the types of mailers at issue here. *See Citizens United*, 558 U.S. at 341–42, 356, 365; *Texans for Free Enter.*, 732 F.3d at 538. Further, because we have concluded as a matter of law that the mailers did not subject TAB to the provisions of the Election Code applicable to political committees, we need not reach appellants' argument that CT General and CIGNA violated the Election Code by making contributions to a political committee without restricting the contributions to administrative purposes. *See* Tex. Elec. Code § 253.100.

To the extent that appellants' claims against CT General and CIGNA are based on the alleged employees' services from TAB to BACPAC, those claims fail as well. The summary judgment evidence was conclusive that CT General and CIGNA paid money to TAB to fund the

22

mailers and that TAB used the corporate money exclusively for the mailers.  In one of his affidavits, Hammond testified, "During the 2002 state election cycle TAB received in excess of $1.8 million from corporations.  The entirety of this money was used to fund TAB's voter education mailers, as described below."  Appellants point to another affidavit by Hammond in which he testified that the mailers were funded through TAB's general account, "which contains money received from dues, assessments, and other revenue-producing activities."  But the fact that the mailers were paid through the general account is not inconsistent with and does not refute Hammond's testimony that the corporate money was used solely to fund the mailers.

We conclude that CT General and CIGNA established as a matter of law that they did not make unlawful corporate contributions to TAB and that the trial court, therefore, did not err by granting summary judgment in their favor.  We overrule appellants' sixth issue.

## CONCLUSION

For the reasons stated above, we affirm.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin
    Dissenting opinion by Chief Justice Jones

Affirmed

Filed:   December 19, 2014

23